UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KERRI S.,

                        Plaintiff,                    **DECISION AND ORDER**

              v.                                      6:21-CV-06648 EAW

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____


## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Kerri S. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 14[1]; Dkt. 15). For the reasons discussed below, the Commissioner's motion (Dkt. 15) is granted, and Plaintiff's motion (Dkt. 14) is denied.

---

[1]      Plaintiff filed her motion as "Appellant's Brief" rather than as a motion but it is clear the submission is intended to constitute Plaintiff's motion for judgment on the pleadings.

- 1 -

## BACKGROUND

Plaintiff protectively filed her applications for SSI and DIB on November 19, 2017. (Dkt. 8 at 325-31, 332-36).[2]  In her applications, Plaintiff alleged disability beginning May 9, 2017.  (*Id*. at 28, 83, 325, 332).  Plaintiff's applications were initially denied on March 20, 2018.  (*Id*. at 83, 154-61).  At Plaintiff's request, a video hearing was held on May 13, 2019, before administrative law judge ("ALJ") Laureen Penn with Plaintiff appearing in Horseheads, New York and the ALJ in Baltimore, Maryland.  (*Id*. at 101-25).  On June 28, 2019, the ALJ issued an unfavorable decision.  (*Id*. at 83-95).  Plaintiff then requested review by the Appeals Council, which was granted on July 6, 2020, and the matter was remanded back to the ALJ for further administrative proceedings.  (*Id.* at 75-78).

Another hearing was held before a different ALJ, David Romeo, on February 5, 2021.  (*Id*. at 28, 48-73).  On February 12, 2021, the ALJ issued another unfavorable decision.  (*Id*. at 28-41).  Plaintiff requested review by the Appeals Council, which was denied on September 27, 2021, making the ALJ's determination the final decision of the Commissioner.  (*Id.* at 6-11).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by

---

[2]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to

perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* §§ 404.1509, 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id.* §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* §§ 404.1520(g), 416.920(g).   To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act through December 31, 2022.  (Dkt. 8 at 30).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 9, 2017, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: bilateral carpal tunnel syndrome status-post bilateral release surgery, lupus, rheumatoid arthritis, osteoarthritis of both hands, depression, anxiety, and adjustment disorder with depressed and anxious mood. (*Id.* at 31).  The ALJ further found that Plaintiff's medically determinable impairment of bunions were non-severe.  (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*).  The ALJ particularly considered the criteria of Listings 1.02, 14.01, 14.02, 14.09, 12.04, 12.06, and 12.15 in reaching his conclusion.  (*Id.* at 32-33).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except:

> she cannot climb ropes, ladders, or scaffolds.  [Plaintiff] can occasionally reach, handle, finger, and feel with both upper extremities.  She cannot be exposed to high, exposed places, or moving mechanical parts. [Plaintiff] can tolerate a low level of work pressure defined as work not requiring multitasking, very detailed job tasks, significant independent judgment, very

short deadlines, teamwork in completing tasks, and more than occasional changes in a work setting.

(*Id.* at 33).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 38).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of callout operator and surveillance system monitor.  (*Id.* at 40).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.*).

## II.   **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that: (1) the ALJ improperly assessed the medical opinion evidence; (2) the ALJ presented the VE with an inaccurate hypothetical; and (3) the ALJ violated his duty to develop the record.  (*See* Dkt. 14 at 17-25).  The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A.   **Assessment of Opinion Evidence**

Plaintiff argues that the ALJ did not properly assess the opinion evidence in the record, specifically the opinions of treating physicians Dana LaVanture, M.D.; James Freeman, M.D., and Heidi Hodder, M.D.  The Court disagrees.

It is well-settled that when making an RFC assessment, an ALJ must consider all the relevant evidence, including medical opinions and facts, claimant's physical and mental

abilities, non-severe impairments, and subjective evidence of symptoms that could interfere with work activities on a regular and continuing basis.  20 C.F.R. §§ 404.1545, 416.945; *see also Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984).  The ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole," and may reach a determination that does "not perfectly correspond with any of the opinions of medical sources," provided the ALJ's overall assessment is supported by substantial evidence and consistent with applicable law.  *Matta v. Astrue*, 508 F. App'x 53, 53 (2d Cir. 2013); *see also Trepanier v. Comm'r of SSA*, 752 F. App'x. 75, 79 (2d Cir. 2018) ("Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, however, the ALJ was entitled to weigh all of the evidence available to make a residual functional capacity finding that was consistent with the record as a whole.").  When the record contains competing medical opinions, it is the role of the Commissioner, and not this Court, to resolve such conflicts.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Under amendments to the Social Security regulations related to the evaluation of medical evidence for disability claims filed after March 27, 2017, an ALJ is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the regulations provide that the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all prior administrative

medical findings" in claimant's record based on the following five factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; specialization; and any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* §§ 404.1520c(b) & (c), 416.920c(b) & (c).

The source of the opinion is not the most important factor in evaluating its persuasive value. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). Rather, when evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* at §§ 404.1520c(a), 416.920c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at §§ 404.1520c(b), 416.920c(b). "Although the new regulations eliminate the perceived

hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may—but is not required—to explain how he considered the remaining factors. *Id*.

The ALJ evaluated several medical opinions in connection with assessing the RFC, including the opinions of Dr. LaVanture, Dr. Freeman, and Dr. Hodder. (*See* Dkt. 8 at 37-38). Plaintiff argues that the ALJ erred in his assessment of these treating providers' opinions by failing to afford greater significance to the providers' treating relationship with Plaintiff. Indeed, Plaintiff's argument centers on her criticism of the current regulations, which she contends disadvantage her and unfairly permit an ALJ to disregard the opinions of treating sources. (Dkt. 14 at 16 ("The Plaintiff is a victim of the abolishment of the treating physician rule in 2017 shortly before the Plaintiff filed her claim for disability.")). Specifically, she argues:

> The Social Security Disability process was drastically changed by the abolishment of the treating physician rule in 2017 shortly before the claimant filed her claim. Essentially an Administrative Law Judge (ALJ) is free to construe the medical records to suit their desired outcome regardless of the conclusions set forth by a long time treating physician. An ALJ can carte blanch[e] disregard treating physician opinions without recourse.

(*Id.* at 18). In support of her contention that the ALJ erred, Plaintiff cites multiple cases from outside the Second Circuit that predate the change in the regulations and apply the

now-repealed treating physician rule.  *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009); *Brownawell v. Comm'r of Soc. Sec.,* 554 F.3d 352, 355 (3d Cir. 2008); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000); *Stewart v. Sec'y of Health, Educ. & Welfare of U.S.*, 714 F.2d 287 (3d Cir. 1983); *Hargenrader v. Califano*, 575 F.2d 434 (3d Cir. 1978).

But Plaintiff's disagreement with the repeal of the treating physician rule cannot change the fact that the rule no longer applies.  *Peets v. Kijakazi*, No. 21-3150, 2022 WL 17725391, at *1 (2d Cir. Dec. 16, 2022) ("That an ALJ does not give controlling weight to a particular medical opinion is not a basis for second-guessing the ALJ's conclusions."); *Wanda N. v. Comm'r of Soc. Sec.*, No. 6:21-CV-00358, 2022 WL 4376484, at *6 (N.D.N.Y. Sept. 22, 2022) ("Under the new regulations, the treating physician rule no longer applies.  Therefore, no special deference is given to the treating physician's opinion." (quotations and citations omitted)).  And it should go without saying that cases from outside this Circuit applying the old rule are not at all persuasive.  Rather, the question at issue is whether the ALJ applied the proper standards pursuant to the regulations governing Plaintiff's case and the Court concludes that he did.

Dr. LaVanture treated Plaintiff for carpal tunnel and performed a procedure for bilateral carpal tunnel release in May of 2017.  (Dkt. 8 at 432).  At follow up visits with Plaintiff in June and July of 2017, Dr. LaVanture noted that Plaintiff continued to have weakness and pain that limited activity, but that she was in no acute distress.  (*Id.* at 543, 548).  He advised her to remain out of work as a housekeeper "given that her work involves extensive use of her hands" and referred her to therapy to assist with her strength and use of hands.  (*Id.*).  Treatment records from a December 18, 2017, visit reflect his impression

that Plaintiff was doing okay from a carpal tunnel standpoint but continued to have issues with pain, intermittent swelling, and weakness in her hands. (*Id.* at 686). Dr. LaVanture encouraged Plaintiff to consider a job that is less manually-intensive and noted that "she has the ability to work at a job that is less hand-intense and I think she would do well." (*Id.* at 688). With respect to Dr. LaVanture's opinions, the ALJ stated:

> The Administrative Law Judge considered statements from Dana LaVanture, M.D., [Plaintiff's] own medical source, which indicate that [Plaintiff's] work involves extensive use of her hands and she is unable to perform work requiring extensive use of her hands. She will likely have permanent work restrictions. However, [Plaintiff] has the ability to work at a job that is less hand intense and she will do well (Exhibits 3F, 6F, 7F, 11F and 12F). I find these opinions somewhat persuasive. Permanent limitations regarding grip strength are warranted based on continued pain after carpal tunnel release surgery. However, given examinations showing full digital range of motion, no acute distress, well-healed incisions, sensation intact to light touch, negative Tinel's, and limited reports of active treatment since December 2017, the record does not support [Plaintiff's] limitations being as extreme as stated in these opinions.

(*Id.* at 37). As is clear, the ALJ did find Dr. LaVanture's opinions somewhat persuasive and credited those portions finding that she could not perform past relevant work or other work requiring extensive use of her hands. And as to the portions he did not credit, the ALJ properly noted that the opinions were not supported by the objective evidence of record or consistent with Plaintiff's limited receipt of treatment since December 2017. *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (claimant receiving only conservative treatment is evidence that can weigh against allegations of disabling symptoms); *Angelita D. v. Comm'r of Soc. Sec.*, No. 1:21-CV-0065 EAW, 2022 WL 17361236, at *4 (W.D.N.Y. Dec. 1, 2022) ("The Court concludes that the ALJ properly relied on and considered Plaintiff's overall treatment history, objective diagnostic testing,

generally conservative treatment, and her ability to perform various daily activities in assessing the medical opinions. That is precisely the kind of analysis the ALJ was required to perform to determine the supportability and consistency of each opinion with the objective evidence of the record."). These were proper grounds for the ALJ's consideration and Plaintiff has not identified any specific error or records otherwise overlooked with respect to the ALJ's conclusions. Indeed, even under the old regulations, an ALJ is not required to credit a treating physician's opinion when it is internally inconsistent, not supported by the record, or contrary to other evidence in the record. *See, e.g., Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (treating physician rule does not require deference to opinion of claimant's treating physician when the opinion is not consistent with other substantial evidence in the record).

Likewise, Dr. Freeman, Plaintiff's rheumatologist, completed two medical source statements, dated April 26, 2018 (Dkt. 8 at 770-76) and February 25, 2019 (*id.* at 798-803). In both statements, Dr. Freeman opined that Plaintiff required certain exertional limitations, including being limited to sitting for thirty minutes to one hour in an eight-hour workday and walking for thirty minutes to one hour in an eight-hour workday. In considering Dr. Freeman's opinions, the ALJ stated:

> The undersigned considered statements from James Freeman, M.D., which indicate that [Plaintiff] is limited to a range of sedentary work with some manipulative, postural, and environmental limitations (Exhibit 16F and 20F). I do not find these opinions persuasive as they are not consistent with the objective medical evidence, level of treatment, activities of daily living, or office records in the file.

(*Id.* at 38). Again, the ALJ identified the reasons for not finding Dr. Freeman's medical source statements persuasive. He noted that the opinions were not consistent with objective

medical evidence or level of treatment received, which are proper considerations. Similarly, he noted that Dr. Freeman's opinions conflict with Plaintiff's reported activities of daily living, which noted elsewhere in the decision include caring for her children and pets, fixing simple meals, walking outside, driving, grocery shopping, partaking in social activities, and attending sporting events of family members. (*Id.* at 36). This was also an appropriate consideration by the ALJ. *See Angela H.-M. v. Comm'r of Soc. Sec.*, No. 6:20-CV-06676 EAW, 2022 WL 4486320, at *7 (W.D.N.Y. Sept. 27, 2022) ("[I]t is well-settled that an ALJ may consider Plaintiff's activities of daily living when evaluating her credibility.").

Finally, Dr. Hodder, Plaintiff's primary care physician, completed multiple employability assessments and disability screening forms for Plaintiff from 2017 through 2020. The employability assessments and disability screening forms generally reflect Plaintiff's diagnoses and her decreased hand strength, joint pain, and issues with ambulation. (Dkt. 8 at 790). Dr. Hodder also completed a medical source statement on February 22, 2019. (*Id.* at 792-97). In it, Dr. Hodder opines that Plaintiff is limited to sitting for 30 to 45 minutes, standing for one hour with breaks, and walking for one hour in an eight-hour workday. (*Id.* at 793). She also noted that Plaintiff's decreased grip and shoulder joint pain limited her abilities for overhead reaching. (*Id.* at 794). In addition, on August 1, 2019, Dr. Hodder provided a letter on Plaintiff's behalf indicating that Plaintiff's medical issues have progressed over the years and make it impossible for her to use her hands to perform her current job. (*Id.* at 852). Dr. Hodder opined that Plaintiff's multiple

medical issues make it unlikely that she will be able to return to work.  (*Id.*).  With respect

to Dr. Hodder, the ALJ explained:

> The undersigned considered statements from Heidi Hodder, D.O., for
> employability assessments and disability certification (Exhibits 10F, 15F,
> 18F, 22F, and 25F).  I find these opinions unpersuasive.  These findings are
> not inherently useful as they are based on different criteria.  Additionally,
> these opinions are not consistent with the objective medical evidence or
> [Plaintiff's] level of functioning per office records and the claimant's
> functional report.  Additionally, the determination of disability is an issue
> reserved to the Commissioner.
>                                  . . .
> The undersigned considered statements from Heidi Hodder, D.O., which
> indicate that [Plaintiff] is limited to a range of sedentary work with some
> manipulative, postural, and environmental limitations.  [Plaintiff's] multiple
> medical issues limit her ability to be able to work at this time, and will likely
> continue to worsen, making it unlikely that she would improve to a point
> when she would be able to return to work (Exhibits 19F and 24F).  I find
> these opinions unpersuasive as they are not consistent with the objective
> medical evidence, the level of treatment, activities of daily living, or office
> records in the file.

(*Id.* at 38).

Much like with Dr. LaVanture and Dr. Freeman, the ALJ identified specific reasons

to not find Dr. Hodder's opinions wholly persuasive.  The fact that the employability

assessments were based on different criteria does limit their efficacy in this proceeding.  20

C.F.R. §§ 404.1504; 416.904 ("Because a decision by any other governmental agency or a

nongovernmental entity about whether you are disabled, blind, employable, or entitled to

any benefits is based on its rules, it is not binding on us and is not our decision about

whether you are disabled or blind under our rules.").  In addition, it is well-settled that an

ALJ is not required to credit a physician's statement on an issue reserved to the

Commissioner, such as that a claimant is "unable to work."  *See Snell v. Apfel*, 177 F.3d

128, 133 (2d Cir. 1999).  Moreover, as set forth above, considerations of consistency with

the objective medical evidence, treatment notes, and activities of daily living are all appropriate reasons for an ALJ to not deem an opinion more persuasive.

Furthermore, the ALJ did not solely rely on the opinions of these providers or upon his own lay opinion, as Plaintiff suggests, but also considered and relied upon the opinions of J. Lawrence, a State agency medical consultant; S. Hennessey, Ph.D., a State agency psychological consultant; Amanda Slowik, Psy.D., a consultative examiner; and Gilbert Jenouri, M.D., a consultative examiner.  "The ALJ is permitted to rely on the opinion of a consultative examiner provided the opinion is supported by and consistent with other evidence in the record."  *Nicolette v. Comm'r of Soc. Sec.*, No. 21-CV-248F, 2023 WL 2581537, at *6 (W.D.N.Y. Mar. 21, 2023) (citing *Camille v. Colvin*, 652 Fed. App'x 25, 28 (2d Cir. 2016) (consultative physician's report may constitute substantial evidence); *Hairston v. Comm'r of Soc. Sec.*, 2020 WL 516897, at *4 (W.D.N.Y. Jan. 29, 2020) ("It is well-established that '[a] well-supported opinion from a consultative examining physician, a non-examining state agency doctor, and/or a medical expert may. . .provide substantial evidence supporting an ALJ's decision.'" (citation and quotation omitted))).  These medical opinions of record, coupled with the supporting medical evidence and Plaintiff's testimony, provided the ALJ with substantial evidence to support his determination.

In sum, under the new regulations, the ALJ is not required to give controlling weight to the opinions of Plaintiff's treating providers, and the ALJ has adequately explained why he declined to credit certain limitations and opinions assessed by Dr. LaVanture, Dr. Freeman, and Dr. Hodder, including by taking into account the consistency and supportability of their opinions while crediting other evidence in the administrative record.

As a result, the ALJ's analysis complies with the aforementioned regulations pertaining to the evaluation of medical evidence for claims filed after March 27, 2017, and remand is not required on this basis.

    **B.**    **Hypothetical to the Vocational Expert**

Plaintiff argues that the ALJ's step five analysis was unsupported by substantial evidence because the hypothetical questions posed by the ALJ to the VE at the hearing did not include all of the limitations claimed by Plaintiff.  This argument lacks merit.

With respect to the hypothetical questions posed to the VE, at step five of the sequential analysis, "[t]he Commissioner may rely on a vocational expert's testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence." *Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010).  However, "[i]f a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Melendez v. Astrue*, 630 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) (quotation omitted).  Accordingly, in assessing the adequacy of the hypothetical questions posed to a VE, the Court will find error "where there was no evidence to support the assumption underlying the hypothetical." *Santos v. Astrue*, 709 F. Supp. 2d 207, 211 (S.D.N.Y. 2010) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)).

It is the function of an ALJ to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 F. App'x at 56.  In this case, the ALJ's conclusion that Plaintiff was capable of a limited range of sedentary work

was fully supported by the medical evidence described above. *See Lay v. Colvin*, No. 14-CV-981S, 2016 WL 3355436, at *7 (W.D.N.Y. June 17, 2016) (in assessing plaintiff with a discogenic lumbar spine who had relatively minor physical impairments, the ALJ was permitted to review the imaging results, "along with the other medical evidence of record, and to conclude that there is nothing in the record to support the severity of the symptoms testified to by the claimant") (quotation omitted).

The Court finds no error in the hypotheticals posed to the VE, which were consistent with the RFC assessment and supported by substantial evidence. (Dkt. 8 at 67-68.) Having appropriately found that Plaintiff was capable of a limited range of sedentary work, the ALJ did not err in presenting hypotheticals consistent with that assessment to the VE. *See Priel v. Astrue*, 453 F. App'x 84, 87-88 (2d Cir. 2011) (holding that "the ALJ properly declined to include in his hypothetical question symptoms and limitations that he had reasonably rejected"); *Vazquez v. Colvin*, No. 5:15-CV-485, 2016 WL 5173278, at *10 (N.D.N.Y. Sept. 20, 2016) ("Because the RFC is supported by substantial evidence, the Court finds no error in the questions presented to the VE[.]"). Plaintiff's contentions to the contrary rest entirely on her contention that the RFC itself lacked substantial evidence. Having rejected that ultimate contention, the Court finds that remand to the Commissioner is not warranted on this basis.

## C.    Development of Record

Finally, Plaintiff argues that the ALJ failed to fulfill his affirmative duty to assist Plaintiff in the development of the record and should have questioned Plaintiff more at the hearing, obtained additional explanations from treating sources, or requested a more recent

MRI or x-ray if he felt one was necessary.  Like Plaintiff's other arguments, the Court finds this one unpersuasive.

It has been well-established that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d at 79 n.5 (quotations omitted).

To the extent the ALJ did not fully credit some of the medical evidence or Plaintiff's testimony, that did not require him to re-contact medical sources or deem the record incomplete or lacking sufficient evidence to make a proper RFC determination. *See Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022) (even though the ALJ has an affirmative duty to develop the record, particularly when there is a deficiency in the record, "a deficiency in reasoning by a treating physician is not the same as a gap in treatment records"); *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (the ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability") (internal citations omitted)).  Nor did Plaintiff request assistance in obtaining additional records or identify any missing records.  (Dkt. 8 at 51 ("[T]he record is complete, Your Honor."); *see also Clarke v. Comm'r of Soc. Sec.*, No. 19-CV-7213 (BCM), 2021 WL 2481909, at *17 (S.D.N.Y. June 16, 2021) (rejecting argument that remand was warranted due to lack of records where the ALJ asked plaintiff's representative about potentially missing records and held record open for her to submit them, and no additional submissions were received); *Lodge v. Comm'r of Soc. Sec.*, No. 12 Civ. 4651 (BMC), 2013 WL 3778812, at *4 (E.D.N.Y. July 19, 2013) (plaintiff was not

entitled to a supplemental hearing when he "never asked the ALJ for further development of the record, and has barely alluded in his brief in this case to what further development efforts the ALJ should have undertaken," and when his request was essentially an attempt to obtain a second opinion because he disagreed with a prior evaluation made by a physician). Moreover, contrary to Plaintiff's suggestion, the fact that the ALJ did not discuss Plaintiff's work history or any other single piece of evidence does not demonstrate that the record was incomplete. *See Kevin F. v. Comm'r of Soc. Sec.*, No. 5:18-CV-1454 (ATB), 2020 WL 247323, at *2 (N.D.N.Y. Jan. 16, 2020) ("An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.").

In sum, Plaintiff's purported challenges to the completeness of the record amount to nothing more than a disagreement with the ALJ's findings. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks omitted)). In other words, simply because there is conflicting evidence in the record with respect to Plaintiff's condition does not mean that the record was not properly developed or that the ALJ's determination is not supported by substantial evidence. Rather, it is the ALJ's duty to evaluate the evidence in the record and to resolve conflicts in assessing the RFC and he has done so here. *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner

to resolve.").  Accordingly, there is no basis for the Court to disturb the Commissioner's

determination.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Commissioner's motion for judgment on the

pleadings (Dkt. 15) is granted, and Plaintiff's motion for judgment on the pleadings

(Dkt. 14) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 24, 2023
        Rochester, New York